We will hear argument first this morning in Case 14-400, Charles Harris v. Mary Vigelahn, the Chapter 13 trustee. Mr. Madden. Mr. Chief Justice, and may it please the Court. Bankruptcy cases can proceed under only one chapter of the Bankruptcy Code at a time. There are three main reasons why, when Petitioner converted his case from Chapter 13 to Chapter 7, Respondent was required to return postpetition wages she held as Chapter 13 trustee. First, the Code says — Scalia Not just wages, right? I mean, you constantly refer to it as postpetition wages. Anything that went into the pot that was still there. Bankruptcy, I mean, it would be, you know, lease payments or anything else, right? Mr. Madden Yes, Your Honor. Any postpetition property, including wages. Now, in the general Chapter 13 case, postpetition property held by the Chapter 13 trustee are wages. But because Section 348F of the Code speaks to what remains property of the estate in the converted case, that section requires that those wages or any other property remain property of the estate only if the case was converted in bad faith. If the case is converted in good faith, as here, the Petitioner gets to keep that property. And second, the Code requires that when a case is converted from Chapter 13 to Chapter 7— Scalia Excuse me. It really doesn't say what happens to it, does it? It just says what becomes the estate of the Chapter 7 bankruptcy. Mr. Madden That's right. Scalia It leaves up in the air what happens to the material that is not described in that provision, right? Mr. Madden I think the statute doesn't explicitly say what happens to that material. But what it does say is— Scalia So why would it go back to the debtor automatically? Mr. Madden Because there's only one estate in a bankruptcy case that's created at the commencement of the case. And so when Congress decided what will remain in that estate after conversion and made that decision turn on whether the debtor has acted in good faith or bad faith, Congress has said what should happen in the case going forward. So by creating a penalty for debtors who have converted their case in bad faith, Congress has said that debtors should retain the funds if they have converted the case in good faith. Moreover— Scalia What happens in bad faith? Mr. Madden In bad faith, under Section 348F2 of the Code, if the debtor has converted his case to Chapter 7 in bad faith, all of the postpetition property remains property of the estate. Effectively, the estate— Kennedy But it seems to me that that is a statutory argument that cuts against your position because the Code makes this distinction. Mr. Madden Well, no. Respectfully, I disagree, Your Honor. I think the Code cuts in our favor because of this distinction. Congress has decided that it's only when a debtor converts his case in bad faith that this property should remain property of the estate available to creditors in the case. Ginsburg What does that mean? The Chapter 13 is over, the Chapter 7 is underway. Remains in a nonexistent estate, there is no more Chapter 13. It goes to the creditors, right? Mr. Madden Not quite, Your Honor. It remains in the estate because a new Chapter 7 trustee takes over as the representative of the estate under the Code. And so it becomes the Chapter 7 trustee's responsibility to administer that estate and make disbursements to creditors according to the Code. Now, here— Kennedy Incidentally, I must say, you are correct. I think this does cut in your favor, the idea that a bad faith conversion means that the estate is the current one, the current estate. I think that Code distinction does cut in front of your favor. Right. And I think that's what Congress intended when they enacted Section 344. Scalia What they say specifically is the property of the estate, and that's the property we're talking about, the property of the 13 estate, right, because it's the property of the 13 estate that goes into 7 at the moment the petition is filed to convert. That's right. So it says which property of the 13 estate that remains in the possession or is under the control of the debtor? Is this money which is in the trustee in the possession of the debtor? No. Is it under the control of the debtor? Well, that depends on the answer to your question. I mean, if you treat it like an escrow, as they want to, it isn't. If you treat it like, say, a normal trustee, a normal trustee, I'll ask them this, it isn't, and therefore it's outside the statute. And there are no other words in this statute that really cut one way or the other. You can make an excellent argument either way as to any other word. So there we are. I read these and I said, I don't know. So if you're going to point to the words, unless I really read them several times in the statute, I couldn't say if you're favored or they're favored, because I don't know the answer to that word, control, and I couldn't find anything that really helped. Well, Section 348F intends essentially two elements to determine whether property is going to remain in the estate. It has to both be in a good faith conversion. It has to be property that existed as of the date of the petition, and it still has to exist in the estate. The debtor doesn't say exists. We've got the words that it says. That's right. And now why is this? You could why? Why? Is it in his possession? What they're thinking about with F is they're thinking about the aunt left a legacy which he received after he filed the 13, and what they want to do is make certain that that legacy is counted as part of the Seventh Estate. Isn't that right? I think that's part of what Congress intended, but that's not a word that suggests anything else. You point to it. Well, there's nothing in Section 348F that distinguishes postpetition property that's held by the debtor versus postpetition property that's held by the trustee. When Congress enacted the statute, it intended to define what would remain property of the estate in the case going forward, and it didn't distinguish. What's the answer to my first question where I pointed to two words, possession and control? Well, I think when a case ends and the trustee's service has terminated, the property of the estate that the trustee's holding is in the control of the debtor, because it becomes the debtor's property if it's no longer property. So is this a revocable or irrevocable trust? If you can convert, you're claiming it's a revocable trust, correct? I think if any analogy from the common law applies, Justice Sotomayor, it would be that of a revocable trust, because Congress has been very clear in Section 1307A that a debtor has the right to convert his case out of Chapter 13 and into Chapter 7 at any time. So if it's a revocable trust, what's the trust law in that situation? A settler in a revocable trust obtains the corpus of the trust upon revocation. That's effectively what Congress has said here, because when a case leaves Chapter 13 and enters Chapter 7, it's Chapter 7 that governs. A new Chapter 7 trustee is appointed to administer the case, and that trustee goes to Chapter 7. Ginsburg. But how is that in practice? Is it when a 13 gets converted to a 7, so the trustee in the 13 is out, is it common to appoint a different person, or is it the same person with a new head? It's usually a different person. So in this case, when Petitioner converted his case from Chapter 13 to Chapter 7, the court docket reflected that Respondent Service had terminated in an interim period, so Chapter 7 trustee was appointed the very next day. Would your problem, the issue, be moot in 99 percent of the cases if the trustee decided to adopt a procedure which will provide for a distribution at the end of every day? If a trustee has already distributed the money to creditors lawfully under a plan, then yes, that property has left the estate. So it would only be the rare situation when this, even rarer than now, when this dispute to creditors can adopt the sort of rule that they desire. Yes, but because trustees are fiduciaries of the estate and represent the estate, they're not allowed to dissipate estate assets by making frequent, even constant, distributions. And it's because they're the representative of the estate that they can't. Well, I suppose if there's a particularly difficult, and maybe this is such a case where the trustee has to take some time to figure it out, perhaps, but in a fortuitous case, where the wages arrive on a Wednesday or whatever, it doesn't seem to me that this would raise serious concerns. And the consequence of that is it becomes even more fortuitous when the assets come within the control of the trustee, so that a rule that says there's a huge difference based on the fortuity of the timing might not make much sense. Well, I think that's the rule, respectfully, that Congress adopted when they allowed debtors to make the conversion at any time. Congress didn't require a debtor to give notice, and Congress didn't make conversion effective only after disbursement. Scalia. What about the parties? Can they handle the situation by providing in the Chapter 13 agreement that any funds remaining, if there should be a conversion, will be distributed among the creditors? Well, what they can't do is undermine the effects of conversion, because under Section 1307 of the Code, the debtor's right to convert the case at any time is not capable. But your answer is no, the parties could not do that. That's right. The answer is no, in that the parties can't undermine the effect of conversion. Why would Congress adopt a rule that depends so much on happenstance? I mean, you know, if the trustee distributes the money promptly, there's nothing there. If he waits three months, the debtor gets it all back. It's so random, just utterly random. Why would anybody adopt a rule like that? I think the rule is adopted here because Chapter 13 is, in essence, a voluntary proceeding. A debtor has to elect to put his future income into the estate in the first place by changing the rules. Yes, but he doesn't know whether this random event is going to happen or not when he does that. So you're saying that Congress is forcing the debtor and the creditors, I suppose, to roll the dice, right? He doesn't know what he's going to get back. It depends on whether the trustee is lazy or not. Sometimes. But there are cases like this one, Your Honor, where it's not mere happenstance. Respondent was holding funds in this case because Chase, the mortgage lender, had received relief from the stay. So funds that had been earmarked for Chase and that no creditor under the plan was going to get other than Chase were being held while Chase and the debtor were paying it. No. That's exactly the question I have, Justice Scalia, just raised, and I'd like you to think about that. You practice bankruptcy law, so you're familiar with it in your experience. Now, I assume with me for the moment that the language does not resolve this. The funds are not in the possession of the debtor. The question is whether he nonetheless still controls them, i.e., gets them back. So that's the assumption. I had exactly the same reaction that I think the Chief Justice and Justice Scalia had, that in the mine run of bankruptcy cases, whether a trustee, at the moment of conversion, is holding funds that he should distribute, that will be distributed to creditors, but they haven't been yet, is a fluke. Chance. Sometimes there might be a lot. Sometimes there might be a little. It depends on when the mail went out that day. It depends on unusual circumstances such as the one in this case. And you shouldn't turn a rule of law on that. You'll produce a — you'll produce gaming and who knows what will happen. Now, you've heard the question. Is the thrust of the question, which I think you've now gotten three times, right or wrong? Is it chance? Is it a fluke? And I've talked very slowly, so I want to be sure that you get this question, because it's important to me how you answer it. I think the answer is that, yes, there are some cases in which this will be happenstance. But Congress has spoken to those cases by allowing them to be. But that isn't my question about what Congress wants. My question is in your experience, what is it? Is it that happenstance governs 50-50, almost never? What's your experience? I don't know from a survey of the Bank of America. No, from your experience. Well, my experience may not be as broad. Well, what is your experience? I would just be curious. I'm trying to get some kind of a rough answer. Here's what I can tell you, Justice Breyer. I think that most Chapter 13 cases are converted because the debtor has stopped being able to make his payments. So in the mine run of cases, there's not really funds that the trustee is holding. I think what happens are cases like these where funds have built up in the trustee's possession for a reason. And that's because the creditor to whom they were earmarked can no longer obtain those funds under the plan. Now, Congress has spoken to this by allowing the debtor in this circumstance or any other to make the conversion at any time because Chapter 13 has been a voluntary procedure. I don't understand. The three months' wages have accumulated in the estate. In the ordinary course, if there's no change, they're going to go out to the creditors. And you just said that the creditors can't get them? I didn't quite get that. They can't get them only because, as the questions have indicated, the trustee is doing something else for a week. Well, they would go to the creditors if, in performing the trustee's service, the trustee, in following the plan, eventually disperses them to creditors. But that's what's important is that the trustee has to be following her service to disperse funds in the case. Now, under Section 348E of the Code, the trustee's service ends at conversion. Now, I think both parties agree that a core function of that service But that doesn't answer the fortuity point other than what you say that's debt. That's the statute and that's it. I think that's right. I think at the end of the day, if a case, if funds are in the estate by happenstance because they just haven't gone out in the next disbursement, that Congress has made the election that the debtor is still entitled to convert his case at any time. Sotomayor, could I follow up on your statement about in this case, the plan called for the bulk of this money to go to Chase, correct? Yes, that's right, especially early in the plan. Early in the plan. And you said Chase couldn't get the bulk of this money. Why? Because it had foreclosed. Not yet. They had obtained relief from the automatic stay in the bankruptcy case. So what happened here is the Petitioner was supposed to make his current mortgage payments what's called outside of the plan or directly to Chase. And because of circumstances, the debtor found himself unable to make those payments. And so then when that happened, Chase went to the bankruptcy court and received relief from the automatic stay, which allowed them to foreclose, but that didn't resolve their claim in the case. So what the trustee explains in her brief that she did was to reserve the funds that had been earmarked for Chase so that, because it's a common circumstance, that the mortgage lender and the debtor will then work out a modification of the loan. But they finished this, but she didn't give the money to Chase. No, that's correct. She decided to distribute it to the other creditors. That's exactly right. What permitted that in the plan? Well, nothing permitted that in the plan until both secured creditors had been paid in full. Now, importantly, in this case, neither of Petitioner's secured creditors under the plan had been paid in full on the day he converted his case from Chapter 13 to Chapter 9. It was only Respondent ended up filing a document in the bankruptcy court called the trustee's recommendation concerning claims in which the treatment of Chase's claims changed. But her service had terminated by that point under Section 348e of the Code. And so this case presents an interesting example of what happens if you end up with two trustees performing the case at the same time. There was never any distribution for these wages that were being collected. And there was never any distribution. They were just held. The funds at issue in this case had just been held. There had been distributions in the case while the case had proceeded. So Chase had received some. How is that – how is it determined what the frequency of payments will be to the creditors? Well, those are determined both in the trustee's service as the trustee in reading the plan terms and the bankruptcy code. But it's generally covered by the confirmed plan. And so the confirmed plan in this case required secured creditors to get paid first before any unsecured creditors were paid. But does the plan say payments will be made once a week or once a month? To some secured creditors, it suggests that plans will be made monthly. But unsecured creditors aren't entitled to payment at any time during the plan. They're effectively entitled to the funds that are left over after creditors who have higher priority are paid first. Mr. Madden, I've been thinking about your response to my earlier question about whether this issue could be covered in the plan if the plan said that, you know, any funds still held by the trustees shall be distributed to the creditors. Your answer was it couldn't because it would contradict the statutory requirement. But there isn't any statutory requirement. I mean, that's what we're dealing with. We're dealing with an absolute void. The statute doesn't say what will happen to this money. If the statute doesn't say so, what's wrong with having the parties adopt a provision in the plan that says that? And by the way, in my estimation, this helps your case because I am much more willing to buy on to a random rule of law that the parties can contract out of than a random rule of law that has to be applied in the future. And what you're urging upon us is a random rule of law. You're just saying, well, you know, Congress wanted randomness. Well, maybe, but. The Third Circuit in deciding this issue did suggest in a footnote that Your Honor's position might be an out that parties could take. I think there are just — there would be two constraints on that issue in another case that isn't presented here. One is that a plan can only provide what the code allows the plan to provide. So what a Chapter 13 plan can provide is specified in Section 1322 of the code. And the code provides that a debtor could vest a property of the estate in any other entity. So a debtor could vest property in specific entities. But there's no provision in the code that allows a debtor to vest property generally in creditors. Then the second problem, as I mentioned earlier, is that under Section 1307a of the code, a waiver of the right to convert a case at any time is unenforceable. So if there's a provision in a plan that undermines the natural statutory effect of conversion by keeping the property of the estate larger in a case of good-faith conversion or asking the trustee to continue performing the service of the trustee after conversion, those provisions of a plan would be unenforced.  Kagan. Kagan. Kagan. And, Mr. Matterly, there's a policy argument that cuts against you which the Fifth Circuit talked about. And, of course, it's only relevant if the statute doesn't say much of anything about this. But let's assume for this purpose that the statute doesn't say much of anything about this. And what the Fifth Circuit said was that Chapter 13 is essentially a quid pro quo, that the debtor gives up a certain amount of his wages, but in exchange the debtor gets to keep his assets. And here what the debtor is essentially asking for is to get back the wages, but he's gotten the benefit of having kept his assets. So he's kind of asking for the quid without the quo, or the quo without the quid, or whatever it is. So what's your response to that? I think there are a number of problems with viewing Chapter 13 through that lens. Chapter 13 is better for debtors and creditors alike. Everyone comes out ahead because no creditor can receive less under a Chapter 13 plan than they would be entitled to receive under a Chapter 7 liquidation. So Congress, and generally the policy of the Bankruptcy Code, is intended to encourage debtors into Chapter 13 because it's better for everyone. The idea that a debtor sort of rents the benefits of Chapter 13 from his creditors, who stands to gain from him doing so, doesn't make a whole lot of sense under the way the Bankruptcy Code is structured. Roberts What about, I gather there can be payments directly to the creditors? Those, I assume, they get those without having to worry about this problem? That's correct. Under Chapter 13, either the debtor or the trustee can be the dispersing agent under the plan. But in either case, it's when the money is dispersed by the dispersing agent that the rights shift to the creditor. But in the case of the creditor who is paid directly, that's sort of no middleman, right? That's right. But the question is whether the – when they've been paid, the property leaves the estate and becomes property of the creditors. Now – No, but I guess I'm just trying to highlight another randomness and fortuity in that some creditors will be – get their money directly, others it will go through the estate, and if you get your money directly, you're not going to have to worry about this. That's true if the debtor keeps up his payments. The reason why I think most creditors like the trustee to be holding funds in the increases the likelihood of success of the plan. Roberts How does that work as a practical matter? Is there direct deposit of a portion of wages with the creditor? It varies from case to case. In this case, Respondent effectively had what's called a wage order. So Petitioner's employer sent a portion of his income directly to the trustee every month. Now – What would happen? Let's suppose you're right. The trustee has given this money to the creditors. And she wasn't supposed to do that. The debtor was supposed to get them. What happens now? How do we undo what has already been done? Well, Respondent may be able to get the money back from the creditors with whom she has relationships and rights. Ultimately, the liability is the trustee's for – So it would be personal liability on the part of the trustee. That's right. And so the order in the bankruptcy case is in order for Respondent to pay this sum of money to the Petitioner. Now, that's because when trustees act outside their service, that's how the liability works in the bankruptcy code. And I think both parties agree that it's a core function of the trustee's service in a bankruptcy case to make disbursements to creditors. Under Section 340e of the code, that service has to end at conversion. I assume the trustees have insurance, right? That's right. They have what's called – So we don't have to feel sorry for this lady. Yes. They have what's called errors in admissions insurance that covers this sort of thing. Well, I assume there would also be a right to recoup from the creditor. The creditor has received something improperly paid. There may be. There are standard recoupment principles. I think that may well be true, Your Honor. I think, returning to the point about the ending of the trustee's service, the practical significance of that is that Congress didn't want two trustees functioning in a case at the same time. Once the case had been converted, all of the claims against the estate in the Chapter 13 case automatically became claims against the estate in the Chapter 7 case. And so what happened here is you had a Chapter 13 trustee still acting on and paying claims as though Chapter 13 was still going, all the while a Chapter 7 trustee had taken over the reins of being the representative of the estate and dealing with claims. The money that's in the hands of the trustee at the moment that the Chapter 7 petition is filed will probably be wages that under the 13 plan were to be distributed to creditors. And the trustee has to make out a check to somebody. So the only question is, is the name of the trustee X, which is the creditor to which it is gone, or is the name Y, which is the debtor or the equivalent? So I don't see how we get very far saying that the trustee's services have ended at that point. No one thinks the trustee would keep the money. And again, six of one, half a dozen of the other. But I think there's a difference here, because the trustee's core function while serving as trustee and while serving as the representative of the estate under the Code is to disperse funds to creditors. Breyer, why do you think that the trustees have filed a brief on the other side? I'm not the – I've read the brief. It makes a series of legal arguments. But they must – what do they care? They obviously care, and I don't – I'll ask perhaps them the question, but what's your view of that? Why do they care? Since it's just a matter of writing what name you write in. I think that may be a better question for my colleague, but – What's your view of it? I don't want to ask them without getting your view. I think the trustee is attempting to send funds to whoever the trustee is supposed to send funds to. It's easy to see why they care in this case, isn't it? Well, in this case, some of the funds – The trustee doesn't want to be liable for the money that she has turned over. Right. The trustee doesn't – That's an easy answer. I mean, it's the whole group. Right. I agree with that. And some of the funds that were dispersed here were funds that were paid to the trustee as her percentage fee in the case as well. If there are no other questions, I'd like to reserve the balance of my time for rebuttal. Thank you, counsel. Mr. Goldblatt. Mr. Chief Justice, and may it please the Court. The funds at issue here were held by the trustee under the terms of a confirmed plan that obligated her to distribute those funds to creditors. Petitioner did not – Now, you did not – the court below said, rejected your argument that when the money was paid to the trustee or the trustee got it, that it vested in the creditors. It rejected that part of your argument, correct? That's right, Justice Sotomayor. And so if you don't have a vested right to the money, then what gives you the right? It's the plan, right? It's the plan and the backdrop against which the plan is written. Well, but the problem is that upon conversion, it nullifies the plan. Justice Sotomayor. So what's the remaining power that you have to distribute the funds to creditors? So, Justice Sotomayor, that is a problem that arises not just in bankruptcy, but under the common law all the time. A trust can terminate and a trustee can be holding funds and is left with the question of do these go back to the grantor, do I pay them backwards or do I pay them forwards. And long before there was a bankruptcy code, there was an established common law principle that says first the trust pays the obligations of the trust, and the obligations of the trust include matured claims of beneficiaries. That's the rule that comes out of Section 235A of the second restatement and Section 89 of the third restatement. And the bankruptcy code was written against that common law backdrop. And where the code – there are indications in the code, we think those indications support the notion that it's consistent with the common law that they can be paid forward, but to the extent the Court were to conclude that nothing in the bankruptcy code helps answer the question, there is surely no reason to think that Congress intended to abrogate that established common law backdrop. Sotomayor It certainly did, because it has said upon conversion you have to give everything to the Chapter 7 trustee. So if I can interject, Section – Sotomayor That's in the control or possession of the debtor. But if it has invested in the creditors, then – Sotomayor What remains to – Roberts So if I can explain. Section 348F, which is the provision I believe you are referring to, says the following. It says that upon the conversion of the case, the Chapter 7 estate is made up of the assets that the debtor had on the petition date that they still have on the conversion date. So there's the question. The question Congress was dealing with is exactly the question that Justice Breyer was referring to, which is, let's say during the course of the 13, there's some sort of windfall that comes into the estate. Does that become part of the Chapter 7 estate? And the answer to that is no. But that question – that determination says nothing about funds that the debtor already paid out to the trustee at a time when the debtor was required to pay those funds to the trustee in order to obtain the benefits of being in Chapter 13 at that time. Kagan It at least raises the question why you should treat differently the, let's say, the inheritance from the new wages. In other words, say the new wages come in, they are garnished, it goes straight to the trustee, but that's also a fortuity. You know, why should you treat the wages differently from the inheritance? So, Justice Kagan, the answer is because the debtor made a decision to pay these funds over to the trustee. Here, the decision was done through a garnishment order, but that itself is, of course, itself a fortuity. What we're talking about are funds that a debtor made a voluntary decision to pay over to a trustee in order to remain in Chapter 13. If the debtor – Kagan Well, until he decided to switch the petition to a Chapter 7. Waxman That's right. And he could have done that at any time. So the debtor here had the ability, as soon as Chase received relief from the stay, to convert at that time. And the debtor didn't make that decision. The debtor instead decided for the remaining 12 months to remain in Chapter 13 and to obtain the benefits of being in Chapter 13, precisely the quid pro quo that Your Honor was describing and that the Court described in Randolph. Breyer How does it work in a revocable trust? A revocable trust. Let's imagine that on – under the terms of the trust, on February 1, Joe Smith gets $100. All right? On March 1, the set law revokes the trust. There is money in the trust that would pay his monthly payment on February 1, on March 1, on April 1. That's $300 that he has, $100 after it's revoked, and $100 before it's revoked. How does it work under the law of revocable trust? So, Justice Breyer, Section 235a of the Second Restatement of Trust deals exactly with this question. The answer is the revocation. Here, the debtor's decision to convert effectively operated as a revocation. Because of that, the remaining 3 years' worth of payments that he otherwise would have been obligated to pay, he didn't have to pay. But as to the funds that were already in the trust, as – where the obligations have matured, the – the trustee is required to pay those matured obligations. The situation that's in other words, in my example, the January money, which is owed before the revocation, goes to the beneficiary. That's exactly right. The March money goes back to the set law. That's exactly right. And you're saying the same is true here, that the pre-Petition 7 money that was owed and not paid should, if in the hands of the – of the trustee, go to the creditor. That any money that he has, which is for the creditors, where they are not yet entitled to it, say like an early payment of the next month's, they go back to the debtor. Justice Breyer, I think that's exactly right. Section 235A of the Second Restatement of Trust talks about a life beneficiary who's entitled to all of the income of a trust during their life. Income comes in while they're alive, but before it's paid, they die. The question is, does that – where does that go? Does it go back to the grantor or does it go to the estate of the life beneficiary? And the answer that Section 235A says is it goes to the – to the estate of the life beneficiary because that obligation matured under the terms of the trust before the revocation. That same principle, I think, is fully applicable here for exactly the reasons that Your Honor describes. Roberts. Maybe this is too abstract a way to envision it, but we talk of an estate, it's somebody's estate, right? John Smith dies, he leaves an estate. Yes. We call it John Smith's estate. Here, you know, we call this Mr. Harris's estate, at least more naturally than we would call it, you know, Consumer Electronics, Chase Manhattan's, whatever's estate. And isn't that a fairly strong signal of who should get the stuff that's kind of left in the middle? Mr. Chief Justice, the bankruptcy code, it is his estate, but it's his estate to be paid and consistent with the terms of the plan. No, I understand that. As I said, just sort of looking at it on a more conceptual level, it does seem that it's – it's, well, I guess I can't say it more than that, that it's his estate, so stuff that you can't decide where it goes ought to go to him. I don't think that nomenclature should overtake the structure and purpose of the code. If I may, while it's true, it's not the same thing. Is it normally called the debtor's estate or is it called the Chapter 13 estate? I would normally say the Chapter 13 estate. In fairness, Justice Scalia, I've heard it used both ways colloquially. Before abandoning the text, though, in fairness, this is not a case in which the language of the code is entirely silent. There are clear indications from the text of the code that do help answer the question that are consistent with the common law backdrop. For example, under Section 1328A of the bankruptcy code, it says, The debtor is entitled to the discharge upon the debtor's completion of the payments he's required to make under the plan. It doesn't say when the trustee distributes that money to creditors. It says when the debtor makes the last payment he's required to make under the trustee, which is at least a signal that the legally operative moment within that Congress was contemplating was the debtor making the plan payment. Breyer. Can I go back to the trustee just for a moment of irrevocable trust? Yes. Now, the standard trust law, CJF, when the grantor exercises a power of revocation, the interest of the beneficiary ceases and the assignee of the grantor, namely the grantor, takes the corpus of the trust free from the trust. But what you are saying is if I look further into that, I will discover that if the grantor revoked the trust on February 1 and if under the trust documents $100 was due to a beneficiary on January 1 and on March 1, standard trust law is the beneficiary gets the $100 from January and does not get the $100 from March. That's exactly right. And the thing that I will look up in the trust law to show that, you gave me the site and I didn't look at the law. It's section 89 of the third restatement. And you're saying that's precisely how we should treat this? That is correct, that there is nothing in the Bankruptcy Code that is inconsistent with that. That's how you want to treat it. We think that's correct, yes. In addition to the provision regarding the ---- Sotomayor, has anyone else, any other circuit, bankruptcy court, treated your function as that of a typical trustee? I mean, you're not a typical trustee. You're of an escrow account. You're a trustee for the estate or for the debtor. So it's a creature created by the Bankruptcy Code that is in some ways a hybrid of escrow law and trust law. We think that's the best way to think about it. As between the two, they both point in the same direction. So I don't think a great deal turns on whether the lens of the common law here is that of escrow or that of trust. There are cases, a number of them, that have talked about the role of the trustee by reference to the common law of trust. Congress did, after all, use the term trustee, which is some indication that it was drawing on the common law backdrop of trust in thinking about this question. Mr. Goldblatt, what do you do about the argument that what you're asking to be done cannot be done because immediately upon the conversion, the Chapter 13 trustee no longer has any powers? So, Justice Scalia, that argument from Section 348e of the Bankruptcy Code simply proves too much, as was suggested earlier. The trustee clearly has to distribute the money to someone. They have to write a check either to the debtor or to creditors. The question is to who is legally entitled to the funds. And that is the answer that drives the resolution of this case, the notion that no one is suggesting the trustee keeps the money herself. She obviously needs to distribute it. And that common law trusts terminate, and there is a doctrine about the wind-up obligations of the trustee upon termination. I suppose you're saying that the service of the trustee is owed both to the debtor and the creditors. If it were to the creditors, then you would have a weaker position. In fairness, Justice Kennedy, the obligations that the trustee has is to carry out the terms of the plan. That includes obligations that run for the benefit of creditors and some that run What about the provision that if the conversion is made in bad faith, then the estate consists of the property as of the date of the conversion? Right. So, Justice Kennedy, that deals So the statute appears to make a specific requirement for that, but not for the case we have. So, Justice Kennedy, that provision of 348 of 348F deals with the situation that Justice Breyer was referring to, which is what if the debtor during the life of the Chapter 13 case received an inheritance? So money that the debtor still had, hadn't yet voluntarily paid over to the trustee, received an inheritance, but she converted in an act of gamesmanship. Well, but I would suppose it would apply to your case, too. The property of the estate as of the date. So the language of 348F does the following. It says that the property of the Chapter 7 estate is the property that he the question that Congress had when it dealt with 348F is the debtor files a Chapter 13 case on and then converts. So the question is, okay, what universe of property is in the Chapter 7 estate? Is it all the property the debtor had at the beginning of the case, or is it the property the debtor had on the day of conversion? That was a fair question, and there was disagreement in the courts on that question until 1994. Congress answered that question by saying the property of the 13 estate is the property that the debtor had on the petition date, the original petition date that they still have as of the date of conversion. And the reason that makes sense is for the reason Justice Breyer identified, because otherwise someone who came into some sort of windfall during that period of time would essentially have to turn that all over to creditors instead of keeping it. So the — or, actually, even more directly, and the Third Circuit talks about this in the — in Ray Michael decision, if the debtor's home reacquired equity during the course of the bankruptcy, or if the debtor just saved a lot of — worked hard and saved money, the notion is by defining the estate that way, it allowed the debtor to keep what the debtor had obtained during the life of the Chapter 13, even when it converts. But that doesn't say a word about what happens to funds that the debtor paid during the bankruptcy in order to obtain the benefits of being in Chapter 13. There is a clear quid pro quo here. The cost of being in Chapter 13, as this Court explained in Ransom v. Lan — in Ransom and in Ham — I'm sorry, and in the Lanning case, is that the cost under Section 325a2 is the debtor is required to pay all of his projected disposable income for the benefit of his unsecured creditors. That is the cost. The benefit the debtor obtains on the other side is he gets to keep his assets. Kagan. But there's also a policy argument, Mr. Goldblatt, that works against you, which is that one of the things we know is that Congress didn't want to disincentivize debtors from using Chapter 13. And essentially, if you win, under your argument, the debtor is worse off for having tried Chapter 13 than if he had gone into Chapter 7 initially, because he's now being put to paying down debt that would have been discharged under Chapter 7. And why should we give him that kind of double whammy, given Congress's view, that we should want people to try Chapter 13 first? So, Justice Kagan, a few different answers, if I may. First, under Section 707b2a, a debtor with above median income may not — is presumptively abusive if they file for Chapter 7 in the first instance. And here, the record, which includes the description at Joint Appendix page 37, shows that this debtor's income was $49,000 a year. So I understand the question about this case. Kagan. That's a very case-specific answer. No, I understand that. So — but not every — the point being that not every debtor is eligible to file for 7 to begin with. There are some who must file for Chapter 13, including, we believe, this debtor. More — more broadly, because of the happenstance of this case, it is indeed fanciful to believe that any debtor's going-in decision about whether to file for Chapter 13 is going to be effective. The debtor, of course, has no control over when the trustee makes payments, and it is — But it seems to me it is always a disadvantage to the debtor who converts to have begun in Chapter 13. Whether there's any money left in the pot or not, he will have paid his wages to his creditors, whereas if he had filed for Chapter 7 immediately, he wouldn't have had to do that. Justice Scalia, that's — in fairness, that's probably right, that after the — viewed as after the fact. It is absolutely right, but — but you're exacerbating the effect of that under your proposed rule. But, Justice Kagan, not in a way that — that could possibly provide a material effect on anyone's incentives. After all, the debtor — No, possibly, but it's at least an extra penalty that you're imposing on him. And — and, you know, one way to look at what Congress wanted to do here is in terms of incentives. Another way is just to say we couldn't penalize people for going into Chapter 13 first. Right. But, Justice Kagan, in fairness, this isn't a penalty. After all, had the trustee distributed these funds to creditors before the date of conversion, no one would say that that operated to penalize the debtor. So viewing it as a penalty, I think, begins with the conclusion that there's a baseline entitlement to these funds to begin with, and that assumption is — is incorrect and inconsistent with the structure of the code. But I thought that Congress's baseline is to the extent possible to make — to — to encourage Chapter 13 and not to impose extra costs on the people who go there. Right. But — but it's — with respect, it's not an extra cost. It is clear that the cost of being in Chapter 13 by function of the statute is the debtor is obligated to pay all of his projected disposable income to the plan for the benefit of his unsecured creditors as the price of being in Chapter 13. And here, the debtor obtained those benefits. He was able to keep his property throughout the time he was in Chapter 13. To address Justice Sotomayor's question, he also was able to seek to negotiate with Chase the effort to modify his mortgage. So what happened in this case is he reached the conclusion that he couldn't keep his house under the monthly payments on the mortgage as it existed, but as commonly occurs, particularly since the financial crisis, he then undertook to negotiate with Chase for a modification of the mortgage. Could he reduce the plan payments? If he could have gotten to a mortgage modification, that would have been implemented by a modified plan. Here, he — they tried, they tried for a year, they were ultimately unsuccessful. But it — but the opportunity to try is the benefit of Chapter 13, and it can't be the case that because he was ultimately unsuccessful, you can say that he didn't obtain the benefit during the period in which he was trying to do that. That was a voluntary decision on his part. He, as the Petitioner explains, could have converted any time. So if he didn't want to continue to devote his projected disposable income under the terms of the plan while he was doing so, he had every right to convert as soon as Chase received stay-over. Scalia. Could I ask you the same question I asked your friend on the other side? Assuming we find against you, and for the Petitioner, on the issue of who gets this money, would the parties be able to alter that disposition in the plan? So, Justice Scalia, that's a really good question, and one with which we have struggled. We believe that the indications of congressional intent that Congress did not mean to permit this. So you agree with your other side on that point? Well, we — on the flip side, we think that the better view of the code is that — let me offer an answer, if I can. There are two different questions, right? One is, if there was language in the plan that did that, and that plan was confirmed, would it govern? The answer to that under Espinoza is obviously yes. The question I think Your Honor intends to ask is, if a plan said that and someone objected, could that properly be confirmed? And our view is that while that's a close question, and thankfully not the one presented here, that the better view is that a plan that said the money goes back to the debtor is sufficiently inconsistent with the structure of the code that that — that such a plan couldn't be confirmed. But that is a much closer question than the one you have here, where there is no language and so the language of the plan should be read against the common law backdrop, which answers this question decisively in our favor. Typically, how — how often are distributions made? Every three months? Every — So in — in the ordinary case, my understanding and experience is that trustees will make monthly distributions. Here, so long as sufficient funds have accumulated to make that worthwhile, here what the trustee did — what the trustee did here makes good sense. So when Chase got stay relief, the trustee was holding money. Once it got relief — and again, this is in response to Justice Sotomayor's earlier question — the — the plan says what happens there. It's on — the Joint Appendix on pages 34 and 35. And it sets out a priority of payment under the plan. And Chase, when it got stay relief, that — that satisfied in full its secured claim. Just when — any time a secured creditor gets back its collateral, that satisfies the secured claim of the secured creditor. So then just going through, to use the bankruptcy vernacular, the waterfall created by the plan, the funds flowed according to — to their — to the unsecured creditors after the payment of administrative claims. That's a very common feature of plans. And typically, trustees, when there are material funds to be distributed, will distribute on a monthly basis. Here, the trustee didn't distribute those funds because the debtor presumably wanted the opportunity to take this time to try to save their house. So the trustee was facilitating the debtor's efforts to save their house by holding those funds to see if a modification could be reached. And when it wasn't reached, the trustee said, okay, now under the plan, this money goes to unsecured creditors. And so — But it sounds like — it sounds like she's acting in the interests of the debtor then. She — she was seeking to serve the objectives of the code and the plan. And the reason people file for Chapter 13 primarily is to save their house. And so that was why the debtor filed. And the trustee was trying to do, consistent with the plan, what the purpose of the case was. When those efforts failed, the trustee can't, obviously, cause that to succeed. When it failed, the trustee then did what the plan obligated her to do. But at that moment, at that very moment, when — think of the instant when he filed the conversion. As of that particular moment, had the efforts failed? Yes. By — by converting what the — in Chapter 7, the debtor is required to turn over all of their non-exempt assets. What I'm wondering is, that as of that instant, is it the case that under the 13 plan, as of that instant, the funds were already — there was already on the trustee at that instant a fixed obligation to write a check to the creditor, then and there? Certainly by no later than the moment of conversion, there was a — there was a fixed obligation. All right. So that's why. But if there had been money in that pile, which she was simply keeping for the fulfillment of an obligation that came up later, that would have under the plan, that she would have had to return, you can see. So the question of — of prepayments is more complicated, and I think a fair — It wouldn't exactly have been prepayments. There would have been money there because of the situation you describe. And if there was not an obligation as of the Section 7 filing instance to pay the debtor to the unsecured creditors, then I think under your view of the case, that money would and should have gone to the debtor for the same reason, as you've just said it would occur, in an irrevocable trust. So, Justice Breyer, just in fairness, I think there's a difference between when the creditor's right to payment attaches and when the debtor's obligation to make the payment is. And what would happen if a debtor pre-funds the plan, strikes me, just without having thought about it as hard as perhaps I should have before today, as a different and perhaps more complicated case? No, not at all. You've provided an easy principle. The principle is, as in a revocable trust, the money that is in the trust that is already under an obligation, then and there, at the matter of revocation, to go to the beneficiary, goes. But where that obligation under the trust document has not yet arisen, it goes back to the settlor. That's what you've told me is the principle. I agree with that principle a hundred percent. And it wouldn't apply the same here? If that's how that principle plays out, then I agree. I guess I agree. I still have problems, which is, if you're talking about the Fifth Circuit saying you don't have a vested right, where does the until you're paid by the trustee and the trustee hasn't paid you, so where's the preexisting obligation? So, Justice Sotomayor, the language of the creditor, the insured right of the creditor. Exactly. So the language of vested rights is fraught, and if what is meant by a vested right is there's a matured obligation of the trust, if that's what is meant by vested right, then the Court below was wrong in that regard. If it meant by vested right something beyond that, maybe it was right. I think the legal standard is, is there a matured obligation of the trust, and that clearly did exist. Whether that does or doesn't give rise to a vested right under some different definition of vesting is unclear to me, but what is clear is that the trust had a matured obligation to pay the funds over to the beneficiaries of the trust. That's what I've always thought of as a vested right. Well, then the Fifth Circuit in saying there wasn't a vested right was incorrect. So if that's what is meant by vested. Mr. Goldblatt, you might not be able to answer this question, but I take it from the fact that the Solicitor General is not here in this case. The government, the trustees don't care who they pay this money to, as long as they have a clear rule, is that correct? I don't think that that's right, Justice Kagan. Here the National Association of Chapter 13 Trustees has come in in support of our position. The Executive Office of the United States trustee plays a very different role in bankruptcy cases, and so their absence I think is evidence that the role of that office is different. And do you think that it matters to the trustees, to any of them, whether we view this as a rule rule or only as a default rule that can be changed by the plan? Is there any reason why they would care about that question? I don't – in fairness, I don't know the answer to that. It seems clear to me that in the absent, that as a default rule, this is the right answer. I think the prudent thing to do would be to wait for a case in which someone sought to change the default to address the next question of can you change the default. My answer – I believe that the better view is probably that you cannot, because there are indications in the code that suggest that Congress intended the application of what we're calling the default rule. But whether that's right or wrong, it seems to me should properly await a case in which it's actually presented. In sum, the question here is the debtor is entitled to convert his case to Chapter 7 at any time. Everyone agrees that when he does, that terminates his obligations to make payments into the trust. The question is whether the decision to terminate essentially is retroactive, that by terminating, by making the decision to convert, he not only excuses himself of future obligations, but is able to undo payments he previously made when he enjoyed the benefits. And for those reasons, the judgment should be affirmed. Thank you, counsel. Mr. Madden, you have four minutes remaining. Thank you. Two main points in rebuttal, Your Honor. First, this case isn't one where you can make a jump to trust law in the restatements, because to make that jump, Respondent requires the Court to declare that a Chapter 13 trustee doesn't hold property of the estate and isn't a representative of the estate, but instead holds a new species of property as a bankruptcy trustee that already belongs to creditors and acts as an escrow agent to creditors instead of a representative of the estate. In our reply brief from pages 6 to 7, we point to a number of indications in the Code where that would be inconsistent with the way the Bankruptcy Code is structured. To take just one example, the Code gives a trustee the right to deposit money of the estate in an interest-bearing account, but under Respondent's view, after confirmation of a plan, a Chapter 13 trustee holds property of the creditors and lacks statutory authorization to make that deposit. It would do violence, I think, to the basic structure of Chapter 13, which would have a number of implications in other cases to declare that a Chapter 13 trustee is no longer a representative of an estate and a fiduciary of an estate, but instead is an agent of the creditors. Second, the service of the trustee point, which involves Section 348e of the Code. Congress didn't intend to tell a trustee that they can do nothing at all and they lack any other powers in a case on how to dispose of money. For example, in Bankruptcy Rule 1019, paragraph 4, a Chapter 13 trustee, upon conversion to Chapter 7, is required to turn over property of the estate to the new Chapter 7 trustee. It's no more a service that the trustee performs as the trustee in the case to turn over property that is no longer property of the estate to the debtor. The service that the trustee performs is to take possession of property of the estate, to examine and object to claims, and when appropriate, to pay creditors according to the Chapter of the Code under which the trustee operates. Now, here, that's apparent, because to make the payments the trustee made in this case, the trustee had to go to the bankruptcy court to recommend how to treat claims. As we explain in the reply brief, Respondent had to tell the court that we should treat Chase's $5,500 claim as being allowed only in the amount of $1,000, because that renders Chase paid in full and allows unsecured creditors to obtain payments under the plan. But all of that only happened after the debtor converted his case to Chapter 7. And what Congress is intending to prevent is to have two trustees operating in the same bankruptcy case on the same estate, dealing with the same creditors' claims. That's what the termination of the service of a trustee upon conversion means. Unless there are further questions. Roberts. Thank you, counsel. The case is submitted.